UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMEKA BLACKSTONE | CIVIL ACTION |
| VERSUS | NO: 10-4604 |
| CHASE MANHATTAN MORTGAGE CORPORATION, CHASE HOME FINANCE, LLC, JPMORGAN CHASE BANK, N.A., NOVASTAR HOME MORTGAGE, INC., and LIBERTY MUTUAL FIRE INSURANCE COMPANY | SECTION: R(3) |

**ORDER AND REASONS**

Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") moves for summary judgment on the issues of detrimental reliance and whether plaintiff Tameka Blackstone's flood insurance policy was in effect at the time Hurricane Katrina hit.[1] Defendants Chase Manhattan Mortgage Corporation, JPMorgan Chase Bank, National Association, as successor by merger to Chase Home Finance LLC, and JPMorgan Chase Bank, N.A. (collectively, "Chase") also move for summary judgment on the issue of detrimental reliance.[2] For the following reasons, the Court GRANTS defendants' motions.

**I.   BACKGROUND**

On October 2, 2003, Tameka Blackstone entered into a mortgage with Novastar Home Mortgage, Inc. in connection with her

---

[1]     R. Doc. 51.

[2]     R. Doc. 60.

purchase of property located at 4618 Coronado Drive, New Orleans, Louisiana.[3]  The mortgage was later transferred from Novastar to Chase.  Blackstone asserts that under the mortgage agreement, she was required to pay funds for escrow items.[4]  The mortgage provides that escrow items included "premiums for any and all insurance required by Lender under Section 5" of the mortgage agreement, which covered, *inter alia*, "any . . . hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance."[5]

Blackstone alleges that in 2003, Chase purchased flood insurance on her property through Prudential Insurance Company and Liberty Mutual.[6]  Blackstone says she then began making escrow payments which included payments for flood insurance.[7]  According to Blackstone, she believed she had flood insurance and received notices advising her of the amount of the premium to be paid by the mortgagee.[8]

---

[3]     R. Doc. 44 at ¶III.

[4]     *Id.* at ¶V.

[5]     R. Doc. 44-1 at 5-6.

[6]     R. Doc. 44 at ¶VIII.

[7]     *Id.* at ¶VII.

[8]     *Id.* at ¶IX.

2

Blackstone asserts that as a result of Hurricane Katrina, her home was flooded.[9]  She thereafter made a claim under her flood insurance policy but was advised that her flood insurance had been cancelled.[10]  Blackstone further asserts that Chase then informed her that because her home was not located in a Special Flood Hazard Area, it did not require flood insurance.[11] Blackstone alleges that at no time before Hurricane Katrina was she advised or otherwise aware that her home was not in a flood zone, or that the mortgage companies were not making payments on her flood insurance.[12]  Instead, Blackstone contends that she had continued to make payments for escrow items and that her payments never decreased.[13]

On November 23, 2010, Blackstone sued Chase in state court asserting claims for breach of contract and detrimental reliance.[14]  On December 22, 2010, Chase removed the action to this Court based on diversity jurisdiction.[15]  After the Court granted defendants' motion to dismiss for failure to state a

---

[9]      *Id.* at ¶XI.

[10]     *Id.* at ¶XII.

[11]     *Id.* at ¶XIII.

[12]     *Id.* at ¶XIV.

[13]     *Id.*

[14]     R. Doc. 1-2.

[15]     R. Doc. 1.

claim, Blackstone filed an amended complaint that asserts a claim of detrimental reliance against Liberty Mutual and Chase defendants.[16]  She also asserts that Liberty Mutual failed to inform her that her policy had been canceled.[17]

Chase and Liberty Mutual both move for summary judgment on the issue of detrimental reliance.  Chase provides several grounds in support of its argument that Blackstone's reliance was unreasonable as a matter of law.[18]  Liberty Mutual contends that Blackstone's detrimental reliance claim is foreclosed.  Liberty Mutual points out that Blackstone's policy was subject to specific renewal provisions and argues that her policy was duly cancelled before Hurricane Katrina because she failed to comply with those provisions.[19]

In response, Blackstone asserts that there are issues of fact precluding summary judgment in favor Chase.  She also asserts that Liberty Mutual should be equitably estopped from denying coverage.[20]  In addition, Blackstone now represents that

---

[16]   R. Doc. 44.

[17]   R. Doc. 44 at ¶XV.

[18]   R. Doc. 60-1 at 5.

[19]   R. Doc. 51-1 at 2.

[20]   R. Doc. 71 at 6-7.

she "does not desire to pursue a detrimental reliance claim against Liberty Mutual."[21]

## II.   STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

---

[21]     *Id.* at 6.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

6

that party's case, and on which that party will bear the burden
of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

## III. CHASE DEFENDANTS

### A.    Standard

Blackstone contends that she detrimentally relied on
Chases's representations that it had paid her flood insurance
premiums out of the escrow funds Blackstone paid.  Under
Louisiana law, "[a] party may be obligated by a promise when he
knew or should have known that the promise would induce the other
party to rely on it to his detriment and the other party was
reasonable in so relying."  La. Civ. Code art. 1967.  To
establish a claim of detrimental reliance a plaintiff must
demonstrate "(1) a representation by conduct or word; (2)
justifiable reliance; and (3) a change in position to one's
detriment because of the reliance."  *Suire v. Lafayette City-
Parish Consol. Gov't*, 907 So.2d 37, 59 (La. 2005)(citing cases).
The theory of detrimental reliance focuses on "whether a
representation was made in such a manner that the promisor should
have expected the promisee to rely upon it, and whether the
promisee so relies to his detriment."  *Id.*  The doctrine is
"designed to prevent injustice by barring a party from taking a
position contrary to his prior acts, admissions, representations,
or silence."  *Id.*  But claims of detrimental reliance are "not

7

favored in Louisiana [and] [d]etrimental reliance claims must be examined carefully and strictly." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir. 2007).

**B.   Discussion**

Chase argues that Blackstone cannot prevail on her claim of detrimental reliance for several reasons.  First, Chase contends that Blackstone has not specified any representations made to her regarding payment for her flood insurance.[22]  Although Blackstone alleges that Chase "represented" to her that it was making payments for her flood insurance by accepting escrowed funds, Chase points out that Blackstone has not presented any evidence in support of this contention.

Second, Chase contends that any reliance on Blackstone's part was unreasonable as a matter of law.  Chase demonstrates that nothing in the mortgage agreement states that Chase required Blackstone to carry flood insurance.[23]  Further, Chase argues that Blackstone not only has no evidence that Chase paid her flood insurance, but also that she failed to verify that the payment of her flood insurance premiums was actually occurring.[24] In support, Chase submits a July 26, 2004 notice sent by Liberty

---

[22]    R. Doc. 60-1 at 5.

[23]    R. Doc. 60-1 at 6.

[24]    *Id.* at 8-9.

Mutual to Blackstone.  This notice states that it is a flood
insurance renewal invoice, gives Blackstone instructions for
renewing her policy, contains the amount of the renewal, tells
her how much the premiums is, and, most importantly, clearly
identifies the expiration date as October 2, 2004.[25]  Chase also
submits Blackstone's deposition testimony that she received the
renewal notice but took no action.

The Court finds that Blackstone was unreasonable as a matter
of law because the existence of the fully integrated mortgage
agreement forecloses any reasonable reliance on other outside
sources.  Nothing in the mortgage agreement states that Chase was
required to pay flood insurance premiums.  Indeed, the mortgage
provides that if "Borrower fails to maintain any of the coverages
described above, Lender may obtain insurance coverage . . . [but]
Lender is under no obligation to purchase any particular type or
amount of coverage."[26]  Under Louisiana law, "one who signs a
contract is presumed to know its terms."  *Leach v. Ameriquest
Mortgage Servs.*, No. 06-1981, 2007 WL 2900480, at *3 (E.D. La.
Oct. 2, 2007)(citing *Tweedel v. Brasseaux*, 433 So.2d 133, 138
(La. 1983)).  Because Blackstone must be presumed to know the
terms of her mortgage agreement, any reliance on representations
outside that mortgage agreement are unreasonable as a matter of

---

[25]    R. Doc. 79-6.

[26]    R. Doc. 44-1 at 6.

9

law. *See Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 404 (5th Cir. 2004) (plaintiffs were unreasonable as a matter of law when they relied on documents purportedly contradicting a fully-integrated contract); *Robin v. Binion*, No. 04-1695, 2007 WL 2895307, at *2-*3 (W.D. La. Jan. 5, 2007)(unreasonable to rely on oral promises in the face of a "fully-integrated, unambiguous contract between the parties that specifically limits the ways in which that contract can be amended, modified or altered").

The Court also rejects Blackstone's argument that she was not unreasonable as a matter of law because Chase can provide no evidence that her escrow payments were reduced after her flood insurance policy was cancelled. As the non-moving party that carries the burden of proof, it is Blackstone who has the burden to set out specific facts showing that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 324. Blackstone also asserts that Chase paid her flood insurance premiums out of the escrow account in September 2006, but provides no evidence to support this assertion. The Court does not consider conclusory allegations and bald assertions to be competent summary judgment evidence. *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (citing *Freeman v. Tex. Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 1994)).

Nevertheless, Blackstone contends that there is a genuine issue of material fact on the issue of whether she paid Chase funds for flood insurance.[27]  She submits (1) a "Monthly Mortgage Payment Analysis" dated December 1, 2003 that contains a breakdown of her escrow payments, noting that $18.17 is for flood insurance;[28] (2) a letter addressed to her from Chase that indicated a surplus in her escrow account;[29] (3) a letter dated September 26, 2006 addressed to her from Chase that indicated that hazard insurance had been set up in her escrow account;[30] (4) Prudential's October 2, 2003 Flood Policy Declaration naming Chase as mortgagee;[31] and (5) Liberty Mutual's July 26, 2004 notice, naming Chase as Payor.[32]

The Court finds that Blackstone fails to establish any representation by Chase on which she could have reasonably relied.  Blackstone admitted that it was she who originally elected to get flood insurance coverage.[33]  Further, she admitted receiving the July 26, 2004 notice from Liberty Mutual which gave

---

[27]    R. Doc. 79 at 2-4.

[28]    R. Doc. 79-2, Ex. 1.

[29]    R. Doc. 79-3, Ex. 2.

[30]    R. Doc. 79-4, Ex. 3.

[31]    R. Doc. 79-5, Ex. 4.

[32]    R. Doc. 79-6, Ex. 5.

[33]    R. Doc. 60-3 at 7.

11

the expiration date of her flood policy and contained explicit
instructions on how to renew it, how much it would cost, and
where to send the money to renew the policy.  She also admitted
that she never received a renewal policy, yet she did not contact
anyone at Liberty Mutual or Chase to find out why.  She was thus
on notice of facts that should have caused her to make inquiries,
and she unreasonably failed to do so.  Because such inquiries
would have easily resolved the issue, she could not have
reasonably relied on any prior conduct by Chase suggestive of the
contrary.  *See Miller v. Lowe*, No. 08-1624, 2009 WL 4730201, at
*4 (W.D. La. Dec. 4, 2009)(plaintiffs' detrimental reliance claim
failed when plaintiffs had a "ready and convenient means of
determining the facts at issue")(internal quotations omitted).

And although Blackstone submits a 2003 mortgage payment
analysis, Chase submits Blackstone's escrow disclosure statements
for September 2004 and projected for October 2004 to September
2005.[34]  These documents reflect no actual or projected payments
for flood insurance from December 2003 to December 2005.
Further, her escrow statement from August 20, 2005 shows no
payments for flood insurance from October 2004 through the end of
August 2005.  Thus Blackstone was advised that Chase was not
escrowing funds for flood insurance and Blackstone could not have
reasonably relied on any of the material she cites for a contrary

---

[34]    R. Doc. 81, Exs. A and B.

conclusion.  Moreover, nothing in the letter notifying Blackstone about the escrow surplus suggests that the surplus was due to flood insurance payments.  Likewise, the letter notifying her that *hazard* insurance costs were added to her escrow account does not indicate a representation by Chase that it continued to cover her *flood* insurance payments.

Finally, the flood policy declarations and July 26, 2004 notice from Liberty Mutual do not constitute representations by Chase.  In Louisiana, "[d]etrimental reliance requires a representation to be made by the defendant or his agent."  *Burks v. Prudential Ins. Co. of North America*, 388 Fed. Appx. 387, 388-89 (5th Cir. 2010)(citing *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 254 (5th Cir. 2008)).  Here, the policy declarations letter is from Prudential for October 2003 to October 2004 and the July 26, 2004 notice is from Liberty Mutual.  As such, they do not constitute representations made by Chase to Blackstone.  *See id.* at 389 (no detrimental reliance when the documents on which plaintiff relied were prepared by a third party).

For all of the foregoing reasons, the Court finds that Blackstone's detrimental reliance claims against Chase must be dismissed on summary judgment.  *See Burks*, 388 Fed. Appx. at 389 (plaintiff's detrimental reliance claim failed as a matter of law when flood insurance renewal documents were clear and plaintiff did not renew them).

IV.  **Liberty Mutual**

A.   **Standard**

Congress established the National Flood Insurance program
through the National Flood Insurance Act of 1968.  *See* 42 U.S.C.
¶¶ 4001-4129.  Under the NFIP, the Director of the Federal
Emergency Management Agency has the authority to use private
insurance companies, referred to as Write-Your-Own companies, to
help administer the program.  The WYO companies directly issue
federally underwritten Standard Flood Insurance Policies (SFIP)
to the public.  *See* 42 U.S.C. ¶¶ 4071-72 (creating federal
jurisdiction for claims under the National Flood Insurance Act).
No WYO company has any permission to alter, vary, or waive any
provision of an SFIP.  *See* 44 C.F.R. ¶¶ 61.4(b), 61.13(d).  WYO
companies defend against claims but FEMA reimburses them for
defense costs because WYO companies are fiscal agents of the
United States.  *See* 42 U.S.C. ¶ 4071(a)(1); 44 C.F.R. ¶¶
62.23(g), (i)(6).

The Fifth Circuit has held that "state law tort claims
arising from claims handling by a WYO are preempted by federal
law." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir.
2005).  *See, e.g., Gallup v. Omaha Prop. and Cas. Ins. Co.*, 434
F.3d 341 (5th Cir. 2005); *Neason v. Fidelity Nat. Ins. Co.*, No.
09-1683, 2010 WL 1817760, at *2 (E.D. La. May 5, 2010).  But the
Fifth Circuit has also held that the National Flood Insurance Act

does not preempt state tort law claims that arise from policy procurement. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 757 (5th Cir. 2009).

## B.   Discussion

Liberty Mutual argues that because Blackstone failed to renew her policy, it was under no obligation to provide coverage under that policy.[35]  Article VII(H) ("Policy Renewal") of the SFIP states:

1.   This policy will expire at 12:01 a.m. on the last day of the policy term.

2.   We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

3.   If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

   a.   If you or your agent notified us, not later than 1 year after the date on which the payment of the renewal premium was due, of nonreceipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

   b.   If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy.  In that case,

---

[35]   R. Doc. 51.

the policy will remain an expired policy as of the expiration date shown on the Declarations Page.[36]

It is undisputed that Blackstone's premiums were not paid on time and that the policy lapsed on October 2, 2004.[37]  Although Blackstone argues that she was never notified that her policy was cancelled, it is undisputed that she did not comply with Article VII(H) once she received the statutorily required renewal notice. Blackstone herself attached a renewal notice to her first amended complaint.[38]  This notice, sent by Liberty Mutual, is addressed to Blackstone and clearly states that it is a "Flood Insurance Renewal Notice."  Further, it states the expiration date of the current policy and the cost of renewal, and instructs Blackstone to indicate the desired coverage amount and return the bottom section of the notice with a check or money order for that coverage to Liberty Mutual.  Blackstone contends that it was her "understanding" that Chase would "take care of paying that," but this understanding does not relieve Blackstone's "duty to read and understand the terms of [the] SFIP." *Richmond Printing LLC v. Dir. Fed. Dkdk* , 72 Fed. Appx. 92, 98 (5th Cir. 2003).  *See also Bull v. Allstate Ins. Co.*, 649 F. Supp. 2d 529, 540 (W.D. La. 2009)(plaintiffs "had a legal duty to read, familiarize, and

---

[36]    R. Doc. 51, Def.'s Ex. 2 at 12.

[37]    R. Doc. 71 at 1.

[38]    R. Doc. 44, Pla.'s Ex. 4.

understand the terms of the SFIP regardless of any assurance" the Allstate agent gave them).  Further, Blackstone never timely contacted Liberty Mutual in an effort to comply with Article VII(H)(3).  The Court finds that Blackstone's policy clearly lapsed on October 4, 2004.  *See Burks*, 388 Fed. Appx. at 389.

Although Blackstone withdrew her claim of detrimental reliance against Liberty Mutual, she nevertheless contends that Liberty Mutual should be equitably estopped from asserting any defenses that arise under Article VII(H) of the SFIP.[39]  She asserts that when she called Liberty Mutual to make a claim following Hurricane Katrina, Liberty Mutual's agents informed her that her policy was not active, rather than cancelled.[40]  Because she did not know that the policy had been cancelled, Blackstone argues, she could not have informed Liberty Mutual that she failed to receive a cancellation notice under Article VII(H)(3).  Accordingly, Blackstone requests that Liberty Mutual be equitably estopped from using Article VII(H)(3) as a basis for nonpayment.

At the outset, the Court notes that Blackstone has never pleaded equitable estoppel, and the Court will not entertain theories that first appear in responsive pleadings.  Moreover, even if Blackstone had properly pleaded equitable estoppel, the Fifth Circuit has made clear that such claims are not available

---

[39]     R. Doc. 71.

[40]     R. Doc. 71 at 3; R. Doc. 71, Pla.'s Ex. 2 at 2.

against the federal government in the context of the NFIP.
*Collins v. Nat'l Flood Ins. Prog.*, 394 Fed. Appx. 177, 179-80
(5th Cir. 2010)(equitable estoppel argument not available because
any payment on plaintiff's claim would come out of the public
treasury); *Marseilles Homeowners Condominium Ass'n v. Fidelity
Nat'l Ins. Co.*, 542 F.3d 1053, 1056 (5th Cir. 2008)(rejecting
insured's claim that insurer was equitably estopped from arguing
failure to submit proof of loss).  *See also Wright v. Allstate
Ins. Co.*, 415 F.3d 384 (5th Cir. 2004)("The Supreme Court has
made clear that judicial use of the equitable doctrine of
estoppel cannot grant respondent a money remedy that Congress has
not authorized.")(internal quotations omitted).  Accordingly, the
Court finds that Blackstone has failed to demonstrate a genuine
issue of material fact that would preclude the Court from finding
that the policy had lapsed as a matter of law.


V.    **CONCLUSION**

    For the foregoing reasons, defendants' motions for summary
judgment are GRANTED.


    New Orleans, Louisiana, this 12th day of March, 2012.

                    _Sarah Vance_

                SARAH S. VANCE
            UNITED STATES DISTRICT JUDGE


                        18